Munson, Respondent, vs. Furrer, Appellant.

*May 5—June 3, 1952.*

For the appellant there was a brief by *Bull & Biart* and *S. W. Franken,* all of Madison, and oral argument by *Mr. Franken.*

For the respondent there was a brief by *Sauthoff & Hansen* of Madison, and *Elliot N. Walstead* of Milwaukee, and oral argument by *Mr. Walstead.*

CURRIE, J.  The determination of the within action turns on the proper interpretation to be placed on the word *"negotiated"* in the real-estate broker's listing contract signed by the defendant, wherein the defendant undertook to pay the plaintiff a commission for the sale of her property if the property was sold at any time within three months after the expiration of the listing contract to anyone with whom the plaintiff broker had *"negotiated"* during the life of the contract.  This is apparently a case of first impression in this court and there seems to be a paucity of decisions on this point by the courts of other jurisdictions.

12 C. J. S., Brokers, p. 203, sec. 88, note 43, lays down the following rule with respect to the meaning of the word *"negotiation"* in a broker's exclusive listing contract, such as that in the instant case, providing for payment of commission if sale is made to anyone with whom the broker had negotiated prior to the termination date:

" *'Negotiation,'* within the meaning of such a contractual provision, means efforts which so far interest a person that, at the expiration of the agency, he may be considered a likely buyer; it does not embrace the broker's mere offer to sell which is met with a prompt refusal and which has no effect on the subsequent sale."

In the case of *Bullis & Thomas v. Calvert* (1926), 162 La. 378, 382, 110 So. 621, there was involved a listing contract very similar in wording to that in the instant case which required the property owner to pay the plaintiff brokers a commission if the owner should sell the real estate after the expiration of the contract to a buyer "with whom you have been negotiating prior to the expiration of this agreement." In that case plaintiff brokers had contacted during the term of the contract a certain Mr. Morgan, as an officer of a corporation which the brokers considered might be a prospect, for the sale of the land. Morgan expressed only mild interest and stated that his company might be willing to pay $325,000, but the lowest offer the owner would then accept was $350,000. After the expiration of the contract, the property was sold to a corporation having substantially the same stockholders as the other corporation to whom plaintiff brokers had offered the property, such new corporation having been formed by Morgan. The court said (p. 383) :

"The question here involved, therefore, amounts to this, Were plaintiffs the first to interest Morgan in the purchase of the lands sold, and *had their negotiations with him progressed so far, at the time the contract expired, that he seemed then a likely purchaser,* so that it would be unfair, and contrary to the intent of the parties, that they should be deprived of the fruits of their labor by the mere circumstance that the sale was not complete before the expiration of the extension contemplated by the contract?" (Emphasis supplied.)

The Louisiana court found that the evidence did not support a conclusion that the plaintiff brokers were entitled to recover and stated further (p. 386) :

". . . that plaintiffs were not negotiating with Morgan during the term of the contract (or even during the alleged extension thereof) in such manner as to interest him as a likely purchaser thereof, or beyond the mere fact of advising him that the land was for sale but could not be purchased for the price which he seemed willing to give for it."

Another similar case is that of *Werner v. Hendricks* (1936), 121 Pa. Super. 46, 47, 182 Atl. 748, except that the property listed for sale was a newspaper route instead of real estate. The listing contract provided that if the defendant owners, subsequent to the termination of the listing, sold the route " 'to anyone with whom the broker had heretofore been negotiating, then the full commission shall be paid to the broker.' " The plaintiff broker had advertised the route for sale and called the attention of one Conrad to the fact that the route was for sale but without arousing any seeming interest. Subsequent to the expiration of the contract another party did interest Conrad, who then did purchase the route. The court held that the plaintiff was not entitled to recover, and said (p. 49) :

"To merely call attention to the route without further discussing the details, which necessarily must follow for the consummation of the transaction or sale, can hardly be called a negotiation. *Unless the discussion can be brought to the point whereby the interest of the proposed buyer can be aroused or the terms of the sale discussed, it cannot be classified as a negotiation. Negotiation presupposes a mutual interest in the subject matter* and merely directing one's attention without further enlisting interest or discussion falls far short of negotiations. The mere offer or solicitation, which meets with prompt refusal or rejection having no effect whatever upon the subsequent purchase of the route, cannot be regarded as negotiations within the meaning of the contract." (Emphasis supplied.)

From the foregoing authorities it would appear that if an exclusive broker's listing contract provides that the broker is to receive a commission if the property is sold by the owner

subsequent to the expiration of the contract to anyone with whom the broker has *"negotiated"* within the original term of the contract, the word *"negotiated"* means that the efforts of the broker to interest a prospect must have proceeded to the point where the prospect would be considered a *likely purchaser*. Ordinarily this would be a question of fact for determination by the jury. However, in the instant case such fact is conclusively established in favor of the plaintiff by the undisputed testimony of Mr. Yopack, that on March 9, 1948 (the date of expiration of the contract), he had concluded to submit an offer for purchase, and therefore it was proper for the trial court to determine such fact as a matter of law from such undisputed testimony.

Appellant's counsel contend that the trial court should have submitted to the jury the question as to whether or not the plaintiff broker's efforts were "the procuring cause" of the sale of the premises to the Yopacks. It is our conclusion that such a test would cast an undue burden upon the broker. In fact, if the evidence in the instant case had disclosed merely that plaintiff had exhibited the property during the original term of the listing contract to the Yopacks, and that they subsequently, shortly thereafter, had purchased the property, a jury question would have been presented as to whether as of the date of the termination of the contract the Yopacks had been sufficiently interested through plaintiff's efforts exerted during the term of the contract to be considered likely purchasers.

*By the Court.*—Judgment affirmed.