### In re Grievance of Peter R. Carlson

[442 A.2d 57]

No. 268-80

Present: Billings, Hill and Underwood, JJ., and Daley and Larrow, JJ. (Ret.), Specially Assigned

Opinion Filed February 2, 1982

*Valsangiacomo & Detora, P.C.*, Barre, for Petitioner.

*Young & Monte*, Northfield, for amicus curiae Vermont Labor Relations Board.

*John J. Easton, Jr.*, Attorney General, and *Bennett Evans Greene* and *Scott Cameron*, Assistant Attorneys General, Montpelier, for Respondent.

**Hill, J.** This case concerns the dismissal of the grievant, Peter Carlson, from his position as a regional supervisor with the Vermont Department of Forests, Parks and Recreation. In December of 1979, the State dismissed the grievant for "gross neglect of duty and gross misconduct." Mr. Carlson then filed a grievance with the Vermont Labor Relations Board contesting his dismissal. See 3 V.S.A. § 926. The Board ordered the grievant reinstated to an unspecified position that would represent a demotion. Both the State and the grievant appeal the Board's decision, and the Board has certified seven questions of law pursuant to V.R.A.P. 13(d). We need only address certified question number one, as it is dispositive of this appeal: (1) Did the Board err in failing to conclude that the grievant was dismissed for just cause?

We answer the certified question in the affirmative, and reverse the Board's decision.

The bulk of the State's charges against the grievant were found to be true. Specifically, the Board found that the State had proven six incidents where the grievant acted improperly. First, the grievant participated in the improper billing of a garage door panel to the State, although the panel had been installed at his supervisor's home. Second, the grievant traded state equipment to an employee for similar merchandise, and sold a state-owned saw to an employee. The proceeds of the sale were placed in an office "coffee" fund, and were never forwarded to the State. Third, the grievant authorized state employees under his supervision to paint another state employee's vehicle on state time, with state materials. Fourth, the grievant authorized a state employee to use a state refrigerator for personal use. Fifth, the grievant installed a wood stove in his home, which he knew had been made by a state employee during working hours, with state equipment and mate-

rials. Sixth, the grievant took money intended to reimburse the State for a similar stove, and placed the funds in the "coffee" fund. Again, the money has never been turned over to the State. See *Peter R. Carlson*, 3 Vt. Lab. Rel. Bd. Op. 303, 317 (July 16, 1980).

Despite finding these repeated instances of dishonesty on the part of the grievant, the Board reinstated him. The Board relied upon "mitigating circumstances," which included the limited personal gain obtained by the grievant, an alleged pattern of abuse in the Parks Department, and a concomitant absence of fair notice as to the wrongfulness of his conduct. These mitigating factors caused the Board to conclude that under the progressive discipline provision in the state employee's contract the most severe discipline, dismissal, was unwarranted.

Our initial task is to examine the governing contractual agreement. See *In re Grievance of the Vermont State Employees' Association ("Phase Down" Employees)*, 139 Vt. 63, 65, 421 A.2d 1311, 1312 (1980). The relevant provision on discipline is contained in Article XV of the collective bargaining agreement:

### DISCIPLINARY ACTION

1. The parties jointly recognize the deterrent value of disciplinary action. Accordingly, the State will:
   (a) act promptly to impose discipline within a reasonable time of the offense;
   (b) apply discipline with a view toward uniformity and consistency; and
   (c) impose a procedure of progressive discipline, in increasing order of severity:
      1. oral reprimand;
      2. written reprimand;
      3. suspension without pay;
      4. demotion;
      5. dismissal.

The parties agree that there are appropriate cases that may warrant the State bypassing progressive discipline or applying discipline in differing degrees so long as it is imposing discipline for just cause.

Article XV, sec. 1. Agreements between the State of Vermont and the Vermont State Employees' Ass'n, Inc. (July 1, 1979 to June 30, 1981).

This case turns on whether the Board was correct in holding that the grievant's conduct did not give the State "just cause" sufficient to warrant dismissal, and bypassing the lower levels of discipline. The contract is silent on this question. Nevertheless, we believe that the Board's decision in this case is erroneous as a matter of law.

Previously, we have construed the meaning of "just cause." A discharge is for "just cause" if, (1) it is reasonable and, (2) the employee had fair notice, express or fairly implied, that such conduct would be ground for discharge. *In re Grievance of Brooks*, 135 Vt. 563, 568, 382 A.2d 204, 207–08 (1977). See *In re Grievance of Yashko*, 138 Vt. 364, 365–66, 415 A.2d 1322, 1322–24 (1980). Application of the *Brooks* standard to this case requires us to reverse the Board.

First, the grievant's dishonesty, indulged in time and again at public expense, justifies dismissal as a reasonable discipline. Surely, if any case is "appropriate" for "bypassing progressive discipline," it is this one. The gravity of the grievant's conduct cannot be minimized. "Short of physical violence, it is hard to imagine a more serious offense by an employee against an employer." *Wilson* v. *State Personnel Board*, 58 Cal. App. 3d 865, 882, 130 Cal. Rptr. 292, 303 (1976). The Board's finding of mitigating circumstances is simply not credible. Even if we accept the Board's conclusions that the grievant obtained minimal personal profit, he certainly defrauded substantial amounts from the State. Furthermore, whatever the abuses engaged in by the grievant's superiors, they cannot mitigate all of the grievant's acts, as most were not done in concert with superiors. Indeed, the grievant himself was a supervisor in an important position, and utilized that very power to defraud the State. Dismissal is certainly justified by a pattern of fraud. See *id.; Haney* v. *Laub*, 312 A.2d 330, 334 (Del. Super. Ct. 1973); *Craddolph* v. *Ackerman*, 57 Ohio App. 2d 150, 152, 385 N.E.2d 1091, 1092–93 (1978). Thus, we conclude that the reasonableness portion of the *Brooks* test was satisfied.

█ Second, it is clear that the fair notice requirement of *Brooks* is also satisfied. After stating that notice could be implied, *Brooks* delineated the governing standard: "whether the conduct was or should have been known to the employee to be prohibited by the employer." *In re Grievance of Brooks, supra,* 135 Vt. at 568, 382 A.2d at 208 (citation omitted). Honesty is an implicit duty of every employee. The Board recognized this implicit duty, but excused the grievant from notice on the ground of condonation by his superiors. See *Peter R. Carlson, supra,* 3 Vt. Lab. Rel. Bd. Op. at 320. Again we must reject the Board's conclusion. While a poorly managed department may preclude notice that sloppy work is ground for discipline, notice that fraud is proscribed can never be vitiated. At a minimum, the grievant should have known that dishonest conduct was prohibited. Thus, under the *Brooks* standard, he had sufficient notice that his conduct was a ground for dismissal.

█ Our practice is to treat the Board's decisions with deference. The Board's findings of fact will be reversed only if they are clearly erroneous. *In re Grievance of Vermont State Employee's Association (Hugh Brady),* 139 Vt. 501, 506, 431 A.2d 474, 477 (1981). The Board's expertise in construing collective bargaining agreements is presumed, and substantial deference is accorded the Board's constructions. *In re Grievance of the Vermont State Colleges Faculty Federation, Local # 3180,* 138 Vt. 299, 301, 415 A.2d 226, 227 (1980). In this case, however, the Board's order is not supported by its own findings. Given the Board's factual findings, there was just cause to support a dismissal, and the State was justified in bypassing the progressive discipline system. See *In re Grievance of Gage,* 137 Vt. 16, 19, 398 A.2d 297, 299 (1979). (Board's duty is to decide whether dismissal is supported by law, and may not substitute its judgment for employer's.)

*Certified question one is answered in the affirmative. The order of the Vermont Labor Relations Board is vacated, and the dismissal is reinstated.*