## In re SHERMAN HOLLOW, INC.

[641 A.2d 753]

No. 92-363

June 22, 1993. Applicant appeals from the Environmental Board's refusal to reconsider its denial of applicant's permit to build a golf course. We affirm.

On February 17, 1989, the Environmental ·Board issued a decision concerning an appeal from the District Environmental Commission's denial of applicant's land use permit. In this decision, the Board denied applicant's permit and listed many deficiencies that would have to be corrected before a permit would be issued. No appeal was taken from this denial. Applicant requested reconsideration by the District Environmental Commission pursuant to 10 V.S.A. § 6087(c), and filed an affidavit certifying that the Commission denied the request for reconsideration. This denial was appealed to the Board, which considered the matter de novo. On November 19, 1991, the Board denied applicant's motion for reconsideration, thereby denying the permit on the grounds that applicant had failed to meet its burden of proof. In response to applicant's motion to alter, the Board issued a memorandum of decision making minor revisions to its earlier order. Applicant appeals the Board's final order pursuant to 10 V.S.A. § 6089(b).

Applicant originally proposed using fertilizers in its golf course management plan. During the hearings before the Board on appeal from the denial of the motion for reconsideration, applicant changed its plans, removed all fertilizers, and substituted an experimental compound, called Green Life Conditioner (GLC). Much of the dispute at the Board's de novo hearing centered on the contents and functioning of GLC.

In its 1989 decision, the Board determined that no permit would be issued without information about pesticides and fertilizers that would be applied to the golf course, including their mobility and solubility, a revised groundwater monitoring program, the effects of using biological controls and assurances that they would be reviewed by experts if used, and assurances that any pesticides and fertilizers would not affect the aquatic biota of streams and groundwater. On appeal, applicant challenges numerous Board findings that the deficiencies have not been corrected, contending that they were not based on facts in evidence or were not supported by substantial evidence. Where, as here, the sufficiency of the evidence is questioned on appeal, we employ a deferential standard of review. The legislature has mandated that the findings of the Board with respect to questions of fact, if supported by substantial evidence on the record as a whole, shall be conclusive. 10 V.S.A. § 6089(c); see *In re Quechee Lakes Corp.*, 154 Vt. 543, 554, 580 A.2d 957, 963 (1990).

Applicant's principal quarrel with the findings is that the product which it intended to apply in the place of fertilizers, GLC, was an organic nontoxic compound that was not a fertilizer and was not a bacteriological control. According to applicant, the substitution of GLC for fertilizers corrected the earlier deficiencies. The Board, however, concluded that, without knowing the ingredients of GLC, it could not make a reliable determination of the compound's characteristics or determine whether undue water pollution would be created by its use. The challenged findings were amply supported by the

evidence and the resulting conclusions supported by the findings. See *In re Southview Associates,* 153 Vt. 171, 178, 569 A.2d 501, 504 (1989).

Applicant next argues that the Board discriminated against it, thereby violating Chapter I, Article 7 of the Vermont Constitution. The basis of the alleged discrimination was the fact that the application for a permit was opposed by neighbors rather than unopposed. Because this classification does not involve a fundamental right or suspect class, discrimination is constitutional provided it has a reasonable relationship to a legitimate public purpose. See *Choquette v. Perrault,* 153 Vt. 45, 52, 569 A.2d 455, 459 (1989). Applicant contends three different forms of discrimination. First, applicant contends that other golf course applicants have been held to a lesser level of scrutiny than itself. These other golf course decisions, however, were made at the District Commission level, and applicant cites no instances where the Board treated other golf course applicants differently from it.

Applicant also alleges that the Board discriminated against it by refusing to accept its discharge permit as presumptive proof of compliance. The final permit, however, was not offered into evidence, nor did applicant seek a recess for the purpose of obtaining a final permit.

Applicant further contends that the Board discriminated against it by retroactively applying new standards for evaluating its case. Applicant argues that the Board changed its requirements during the case. All of applicant's contentions hinge on the Board's finding that GLC is analogous to a fertilizer. Although there was some conflicting evidence as to the classification of GLC, the Board's finding was based on its determination that GLC is a substance applied

to land to promote plant growth. This finding was supported by substantial evidence, and we defer to the Board's specialized knowledge in the environmental field. See *In re Green Mountain Power Corp.,* 138 Vt. 213, 215, 414 A.2d 1159, 1160 (1980). The Board's requirements regarding ingredients of GLC, GLC's effect as a bacteriological control, GLC's impact on water pollution, and GLC's effect on aquatic biota were not new standards because they had been imposed in the 1989 order regarding all fertilizers.

In sum, in none of its claims has applicant shown arbitrary discrimination. The Board's actions have a rational relationship to a legitimate purpose and are constitutional.

Applicant next argues that the Board erred by not rendering its decision in a timely manner. Applicant first contends that the Board violated the Vermont Public Meeting Law by failing to give notice of either the reopening or adjournment of the recessed hearing prior to entering its deliberations. Applicant, however, admits that Vermont's Public Meeting Law does not apply to quasi-judicial proceedings such as this reconsideration proceeding. See 1 V.S.A. §§ 310, 312(e). Applicant cites no authority for its contention that the Board needed to give public notice prior to entering its deliberations other than 10 V.S.A. § 6085, which requires notice of all hearings. Applicant's argument is thus inadequately briefed and we need not address it. See *Quechee Lakes Corp. v. Terrosi,* 141 Vt. 547, 553, 451 A.2d 1080, 1083 (1982).

Applicant also argues that the Board improperly refused to accept new evidence on October 21, 1991, although it did not adjourn the hearing until October 30, 1991. Applicant neglects to point out that as of August

27, 1991, the hearing was in recess. Thus, under Environmental Board Rule (Board Rule) 13(b), applicant was required to move to reopen the hearing in order to submit new evidence. Applicant failed to do so, and there was no procedural error. Applicant implies in its argument that the Board failed to make its decision within the twenty-day statutory limit set forth in 10 V.S.A. § 6086(b). Without deciding whether § 6086(b) applies in this case, we hold that the Board's decision was issued within twenty days of the close of the hearings. The hearing was in recess until October 30, 1991, when the Board adjourned, and the decision was issued on November 19, 1991.

Applicant also contends that the Board violated its own rule requiring it to act promptly upon motions to alter. See Board Rule 31(A). Applicant argues that "promptly" should mean thirty days because Rule 31(A) requires the Board to render a decision within thirty days whenever it chooses, on its own motion, to alter a decision. Applicant neglects to note that such sua sponte decisions to alter are limited to instances of manifest errors, mistakes and typographical errors. The controlling statutory language governing applicant's motion to alter is "promptly," and the Board acted promptly in deciding applicant's motion to alter. Applicant filed a 92-page motion to alter on December 18, 1991. The Board gave notice of a hearing on February 12, 1992 and issued its decision on June 19, 1992. In light of the length of the motion and the complexity of the claims, the Board acted promptly.

Applicant also argues that it was denied procedural due process because the Board was biased against it. This Court will find bias only where it is clearly established by the record. Cf. *DeGrace v. DeGrace*, 147 Vt. 466, 469, 520 A.2d 987, 989 (1986) (as applied in disqualification of a presiding judge). The mere fact that a decision was rendered contrary to the wishes of a party does not denote bias. *In re Wildlife Wonderland, Inc.*, 133 Vt. 507, 513, 346 A.2d 645, 649 (1975). First, applicant claims that the Board favored the neighbors by allowing their soil test to be admitted under a lesser standard of authentication, while applicant's Priority Pollutant Scan was excluded four times based on a higher standard of authentication. Even assuming, arguendo, that the Board made a mistaken evidentiary ruling, this, standing alone does not constitute bias.

Second, applicant claims to show evidence of bias by raising many arguments that we have already addressed in this opinion. None of these issues shows bias because the Board's decisions were correct. Applicant also contends that several findings imply that the Board did not believe applicant. It is the Board's job to judge the credibility of witnesses, see *In re Young*, 134 Vt. 569, 571, 367 A.2d 665, 666 (1976), and findings indicating that the Board did not believe applicant do not demonstrate bias.

Applicant also argues that the Board was biased because it left some of the neighbors' unadmitted evidence in the file but removed applicant's unadmitted evidence. Applicant claims to have reviewed the file shortly after the August 22 final public hearing and written a letter to the Board about the situation, to which the Board allegedly responded. Neither the letter nor the response is in the record, and applicant has not referred us to what exhibits are currently in the file that should not be

there. See *Quechee Lakes Corp. v. Terrosi,* 141 Vt. at 553, 451 A.2d at 1083 (where defendant's broadgauged evidentiary attack constitutes inadequate briefing or argument, this Court will not search the record for the error). Moreover, this error would not rise to the level of bias, and we reject applicant's claim.

Applicant's final argument is that the Board effected a temporary taking of its property during the eightyear application procedure. Applicant bases its claim on both the Vermont Constitution, Chapter I, Article 2 and the United States Constitution, Fifth and Fourteenth Amendments. This claim is not ripe for review until applicant has received a final decision regarding governmental regulation of its property. See *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186 (1985).

Neighbors cross-appeal for sanctions on the grounds that applicant exceeded the bounds of zealous advocacy in the conduct of this appeal by distorting the District Commission decisions; accusing the Board of bias without any support; falsely accusing the Board of distorting its own record; failing to accurately present the law on takings; discussing other golf course decisions that were not admitted into evidence; distorting other facts; and abusively attacking both the Board and the neighbors. This Court has the inherent power to sanction lawyers for abuse of the judicial process; however, this Court has stated that sound discretion and restraint must be used when relying on these inherent powers. See *Van Eps v. Johnston,* 150 Vt. 324, 327–28, 553 A.2d 1089, 1091–92 (1988). Although applicant's arguments have little foundation and are often inade-

quately briefed, we find no evidence of bad faith. The request for sanctions is denied.

*The Board's decision is affirmed; neighbors' request for sanctions is denied.*