# Secretary, Vermont Agency of Natural Resources v. Earth Construction, Inc. and Rodney Jordan

[676 A.2d 769]

No. 93-427

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed January 12, 1996

Motion for Reargument Denied March 6, 1996

Motion for Reconsideration Denied March 29, 1996

*Christine Melicharek*, Waterbury, for Plaintiff-Appellee.

*Rodney Jordan*, Groton, pro se and for Defendant-Appellant Earth Construction, Inc.

**Gibson, J.** Defendants Earth Construction, Inc. and Rodney Jordan appeal two orders of the Environmental Law Division (ELD) imposing penalties for the renovation, expansion and use of an access road and portions of their gravel pit in East Montpelier in violation of Act 250 and the Vermont Wetland Rules. We affirm.

Rodney Jordan is the president and executive officer of Earth Construction. In February 1992, Earth Construction purchased a seventy-five-acre tract containing a gravel pit in East Montpelier, with a plan to continue extracting gravel. That same month, Earth Construction began to improve the access road from Route 2 that descends into the gravel pit and forks around the western and southern borders of an area that the National Wetlands Inventory map identifies as a Class Two Wetland. Under Jordan's supervision, Earth Construction cut trees and levelled a 54-by-102-foot turn-around area for trucks, removed a clay bank that obstructed the planned path of the road, applied gravel to 115 feet of the road, paved a seventy-three-foot section of the road at the intersection with Route 2, and installed eight cubic yards of asphalt to the edge of the gravel pit to facilitate truck passage. Defendants did not apply for a permit to improve the access road or for conditional use approval for filling, excavating and grading activities that occurred within fifty feet of the wetland. Nor did they apply for reclassification of the wetland to Class Three status so that it would not require protection. During the spring of 1992, after defendants started to remove part of a clay berm on the edge of the gravel pit, 200 cubic yards of clay slid down the slope of the pit into the wetland. Defendants removed most of the clay with a backhoe, but were unable fully to restore the wetland to its previous condition.

In March 1992, the District 5 Environmental Coordinator asked defendants to submit information that would enable the Board to determine whether the activities on the site were preexisting and therefore exempt from Act 250 jurisdiction. Defendants responded, but did not provide enough information for the Board to make the determination. On April 17, 1992, the District Coordinator issued an advisory opinion that, because a substantial change had taken place on the property, an Act 250 permit was required for the entire site. Later, after inspecting the site, the Agency of Natural Resources (ANR) Enforcement Division served a Notice of Alleged Violation on defendants advising them to obtain Act 250 approval before continuing any aspect of the gravel pit operation. In May 1992, defendants sought an advisory opinion from the Executive Officer of the Environmental Board as to whether there was Act 250 jurisdiction over the project, and continued to operate.

While the Board deliberated the jurisdiction question, the Secretary of ANR, on June 3, 1992, served defendants with an Administrative Order citing violations of Act 250 and the Vermont Wetland

Rules, ordering that certain activities cease and remedial actions be taken, requiring defendants to apply for an Act 250 permit, and assessing a penalty. Defendants continued to operate without an Act 250 permit, however, until an Emergency Order issued from the ELD on June 17, 1992. Defendants requested a hearing before the ELD regarding the Administrative Order. The ELD held hearings on September 9 and 11, and October 22, 1992, and then continued the hearings at defendants' request to await the Board's ruling regarding Act 250 jurisdiction. Pending receipt of the Board's jurisdictional decision, the ELD ruled on February 9, 1993 that defendants had violated the wetland rules.

On October 1, 1992, on behalf of the Executive Officer of the Environmental Board, Board counsel issued an advisory opinion, concluding that Act 250 jurisdiction did extend over the disputed site. On November 9, 1992, defendants petitioned the Board for a declaratory ruling on the opinion, but the Board dismissed the petition as untimely on March 16, 1993.

At the close of the ELD hearings, defendants moved to dismiss, claiming the State had not presented sufficient evidence to support either a wetland or an Act 250 violation. In its order of February 9, 1993, the ELD denied the motion, determined that defendants had violated the Vermont Wetland Rules, and imposed a penalty of $3,500. On July 6, 1993, after receiving notice of the Board's March 16 dismissal of defendants' petition, the ELD reviewed the jurisdictional issue, and determined that defendants' activities had brought them under Act 250 jurisdiction. It held that defendants had violated Act 250, and imposed a penalty of $36,497.

■ We give deference to the Environmental Board's interpretations of Act 250 and its own rules, *Vermont Agency of Natural Resources v. Duranleau*, 159 Vt. 233, 237, 617 A.2d 143, 146 (1992), and to the Board's specialized knowledge in the environmental field. *In re Sherman Hollow, Inc.*, 160 Vt. 627, 628, 641 A.2d 753, 755 (1993) (mem.). We also defer to the conclusions of the ELD, in recognition of the ELD's "expertise in environmental enforcement," *Secretary v. Handy Family Enters.*, 163 Vt. 476, 482, 660 A.2d 309, 313 (1995), and will affirm the ELD if the record supports its findings and the findings support its conclusions. *Id.* at 484, 660 A.2d at 314.

I.

A.

■ With respect to the Act 250 violation, defendants argue that their project is exempt from Act 250 under the so-called "grandfather" provisions of 10 V.S.A. § 6081(b).* Section 6081(b) exempts certain preexisting uses, but also states that permits are required for any "substantial change" in otherwise exempt developments. We have upheld the Environmental Board's two-pronged test used to determine whether a substantial change has occurred at a preexisting development. *In re H.A. Manosh Corp.*, 147 Vt. 367, 369-70, 518 A.2d 18, 20 (1986). Under that test, the Board must determine whether a "cognizable physical change" to the preexisting development has occurred, *id.* at 370, 518 A.2d at 20, and if so, whether it would have potential significant impact on the Act 250 criteria in 10 V.S.A. § 6086(a)(1)-(10). *In re Barlow*, 160 Vt. 513, 521-22, 631 A.2d 853, 858-59 (1993).

■ Defendants argue that there was insufficient evidence to support the ELD's finding that, since 1970, there had been substantial change at the site. Inasmuch as the ELD assessed an Act 250 penalty only for defendants' expansion of the Route 2 access road, we need decide only whether the record contains evidence that this portion of defendants' project resulted in a substantial change to the preexisting development. The evidence shows that the clearing of trees and excavation of the turnaround, the application of gravel to 115 feet of the road, the paving of a larger portion of the road, the paving of an apron on the access road, and a direct rather than oblique access down into the pit had the potential to cause significant impacts. The possible impacts include air and noise pollution from the changed routing of truck traffic (§ 6086(a)(1)), soil erosion where the access road entered the pit and at the perimeter of the site (§ 6086(a)(4)), reduced highway safety due to a more direct truck entrance onto Route 2 (§ 6086(a)(5)), and degradation of the aesthetics of the surrounding area (§ 6086(a)(8)). The evidence supports the ELD's findings; consequently, defendants' project comes within Act 250 jurisdiction.

---

* Although defendants waived their statutory right to dispute jurisdiction by filing an untimely petition with the Board for a declaratory ruling, the ELD chose to rule on the issue so we will review its determination.

Defendants contend, however, that a Memorandum of Understanding between the Environmental Board and the Vermont Agency of Transportation defeats Act 250 jurisdiction, or, in the alternative, that the Act 250 enforcement action is barred by an undefined "Statute of Limitations." These claims were not presented to the ELD and are not preserved for our review. See *Dunning v. Meaney*, 161 Vt. 287, 292, 640 A.2d 3, 6 (1993) (Supreme Court will not address issues not raised in trial court). Defendants also assert that their improvements of the access road are exempt from Act 250 "Road Rule" jurisdiction, under Environmental Board Rule 2(A)(6), because the road is not more than 800 feet long and will not provide access to more than five parcels of property. They make this argument for the first time in their reply brief; thus, they have not properly presented the issue for our review. See *Maynard v. Travelers Ins. Co.*, 149 Vt. 158, 160, 540 A.2d 1032, 1033 (1987) (issues not raised in appellant's original brief may not be raised for first time in reply brief).

## B.

Defendants further contend that the fine imposed by the ELD for the Act 250 violations was excessive under 10 V.S.A. § 8010(b). They argue that the ELD did not calculate accurately the economic benefits gained from any infraction or, in the alternative, did not give sufficient weight to the violators' alleged lack of knowledge of the violation. In reviewing penalties under 10 V.S.A. § 8012(b)(4), the ELD must apply the statutory criteria set forth at 10 V.S.A. § 8010(b)(1)-(8). The record shows that the ELD reduced the $49,420 fine imposed in the Administrative Order after considering all of the statutory criteria.

Defendants contend that the ELD should have based its evaluation of defendants' economic benefit from the Act 250 violation strictly on the cost of the raw material extracted from the gravel pit. The ELD noted, however, in its conclusion that defendants also realized a profit from the sale of the extracted materials, and properly included this factor in its calculations. In addition, the ELD, in its discretion, added an amount for deterrent effect.

Earth Construction received notice of its violation in the advisory opinion of April 17, 1992, two months before receipt of the June 17, 1992 Emergency Order. Act 250 authorizes the imposition of a $25,000 fine for each violation and additional fines of up to $10,000

per day, with a maximum penalty of $100,000. 10 V.S.A. § 8010(c). The $36,497 fine issued in this case is reasonable considering defendants' continued activity for two months after receiving notification of their violation and is well within the parameters of the statute.

## II.

With respect to the wetland violation, defendants argue that their project is an allowed use under Vermont Wetland Rules (V.W.R.) §§ 1.1, 6.2(l) and 6.2(m). We disagree. Section 1.1(3) provides an exception for projects that are not subject to state permitting requirements regulating land use or the protection of wetlands. Because defendants were required to obtain an Act 250 permit for the substantial changes they made to the Route 2 access road, their project does not fall within the exception.

Defendants claim that they merely reconstructed, routinely repaired or added to structures and facilities that were in existence on February 23, 1990, when they began making improvements to the site. Such activities would be exempt from the Vermont Wetland Rules under § 6.2(l), which provides an exception for "the maintenance, reconstruction or routine repair of structures and facilities . . . in existence as of February 23, 1990 or additions to such structures or facilities which does not involve substantial expansion or modification." The ELD found, however, that the clay berm that slid into the wetland was not a "structure" or a "facility." We agree. See *Handy Family Enters.*, 163 Vt. at 482, 660 A.2d at 313 (Court defers to ELD's expertise in environmental enforcement matters).

Defendants also contend that they were engaged in the routine maintenance of manmade sedimentation ponds and were therefore exempt under Vermont Wetland Rule § 6.2(m). Section 6.2(m) provides an exception for "routine maintenance and upkeep, including the removal of vegetation or maintenance dredging, from manmade ponds less than two acres in size." Here again, we defer to the expertise of the ELD and will affirm its conclusions if they are supported by the record. *Id.* at 484, 660 A.2d at 314. The ELD found that defendants had not maintained an active sedimentation pond on the site, but instead had engaged in filling, excavating and grading activities within fifty feet of the Class Two wetland without obtaining conditional use approval for those activities under V.W.R. § 6.3 or reclassification of the wetland under V.W.R. § 7. Further, defendants did not take action to prevent the landslide of 200 cubic yards of clay

into the adjacent wetland. The record supports the ELD's conclusion that a wetland violation had occurred.

Finally, defendants claim that questions of fact and law were presumed against them in prior proceedings, violating their right to due process. We will find bias only where it is clearly established by the record. *Sherman Hollow*, 160 Vt. at 629, 641 A.2d at 756. The mere fact that a decision was rendered contrary to the wishes of a party does not denote bias. *Id.* Defendants have failed to point to anything in the record to support their claim of bias and rely instead on a presumption of bias below. We find no merit in these allegations.

*Affirmed.*