**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| | } | |
| In re Times & Seasons, LLC | } | |
| Act 250 Reconsideration | } | Docket No. 45-3-09 Vtec |
| | } | |

### Decision on Multiple Motions

Times and Seasons, LLC ("Applicant") seeks an Act 250 permit authorizing the construction and operation of a gift shop and deli, with related improvements, on a 7.3± acre tract of land located at 1675 Dairy Hill Road in South Royalton, Vermont. Applicant's initial efforts began in March 2004. After its application was denied, both by the District 3 Environmental Commission ("District Commission") and the former Vermont Environmental Board ("Environmental Board") for failing to satisfy Act 250 criteria 8, 9(B), and 10, Applicant appealed to the Vermont Supreme Court. The Supreme Court affirmed the permit denial on the grounds that the project did not comply with criteria 8 and 9(B). The Supreme Court issued its final entry order, addressing Applicant's motion for re-argument, on March 14, 2008.

Applicant thereafter filed with the District Commission an application for reconsideration pursuant to 10 V.S.A. § 6087(c).[1] As explained more fully below, § 6087(c) allows an applicant to apply for reconsideration with the District Commission within six months of a final Act 250 permit application denial if the applicant certifies that it has corrected the deficiencies identified during the denial.[2] An Act 250 permit may issue if those problems are satisfactorily addressed.

The District Commission determined that Applicant's modified project complied with Act 250 criterion 8, but it denied the application for failing to satisfy criterion 9(B). Applicant timely appealed that decision to this Court; the only issue raised in the appeal is whether the deficiencies regarding criterion 9(B) have been corrected such that the proposal now complies with criterion 9(B).

No adjoining landowners have appeared in these proceedings. The only entities to appear in opposition to Applicant's proposal are the Land Use Panel of the Vermont Natural Resources Board ("NRB"), which is represented by its attorney, Mark L. Lucas, Esq., and the Town of

---

[1] We note here, for clarity, that an application for reconsideration filed pursuant to 10 V.S.A. § 6087(c) is wholly different from a motion to amend under V.R.C.P. 59(e), which is often called a motion for reconsideration.

[2] Although Act 250 applicants have long taken advantage of § 6087(c), this case appears to be the first instance in which an Act 250 permit applicant sought reconsideration following a denial by the Vermont Supreme Court.

1

Royalton Planning Commission ("Planning Commission"), which is represented by Geoffrey H. Hand, Esq. Applicant is represented by David L. Grayck, Esq. and Zachary K. Griefen, Esq. The Agency of Natural Resources has informational status through Judith L. Dillon, Esq.

Currently pending before the Court are three cross-motions for summary judgment, filed on behalf of Applicant, the NRB, and the Planning Commission. The NRB has also filed two motions that seek to strike from the record certain pleadings filed by Applicant. Because our decision on the motions for summary judgment is reached without considering any of the challenged pleadings, and because the issues discussed herein are dispositive, we need not address the NRB's motions to strike.

## Procedural History & Factual Background

For the sole purpose of putting the pending motions into context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

1. In March 2004, Applicant sought approval under Act 250 to construct and operate a gift shop and deli on a 7.3± acre tract of land near the Joseph Smith Birthplace Memorial; Applicant's property is located at 1675 Dairy Hill Road in South Royalton, Vermont. In addition to constructing a roughly 4,800-square-foot gift shop and a twenty-seat deli, Applicant proposed to improve the parcel with an access drive and parking lot, a pump station, a septic field, and a drilled well.

2. On August 25, 2004, the District Commission denied Applicant's Act 250 permit application; Applicant appealed that decision to the Environmental Board.

3. The Environmental Board denied Applicant's application, concluding that the proposed project did not comply with Act 250 criteria 8, 9(B), or 10. Re: Times and Seasons, LLC, No. 3W0839-2-EB, Findings of Fact and Conclusions of Law, and Order (Altered) (Vt. Envtl. Bd. Nov. 4, 2005).

4. The Board determined that Applicant failed to satisfy criterion 8 for two reasons: Applicant did not take adequate mitigation measures to minimize the project's aesthetic impact, and the project violated a clear, written community standard intended to preserve the scenic beauty of the area. Id. at 42–50. The Board also concluded that the proposal did not comply with criterion 9(B) because the project would significantly reduce the agricultural potential of 1.9± of the 2.8± acres of primary agricultural soil on the project site. Id. at 51–56. Finally, the Board concluded that Applicant did not satisfy criterion 10 because Applicant failed to show that

2

locating the commercial development close to the town center was not feasible, which was a directive stated in the Town of South Royalton Town Plan ("Town Plan"). Id. at 58–67.

5. Applicant appealed the Environmental Board's decision to the Supreme Court, and on February 1, 2008, the Court affirmed in part and reversed in part the denial of Applicant's application. In re Times & Seasons, LLC, 2008 VT 7, 183 Vt. 336.

6. The Supreme Court agreed that Applicant's proposed project did not comply with criterion 8, affirming the Environmental Board's finding that Applicant took inadequate mitigation measures to minimize the project's aesthetic impact. Id. at ¶¶ 9–10.[3] The Court also agreed that Applicant's project did not comply with criterion 9(B), finding no error in the Board's conclusion that 1.9± of 2.8± acres of primary agricultural soils would be impacted by the project. Id. at ¶ 16.[4] However, the Court reversed the Board's determination regarding criterion 10, concluding that the general Town Plan recommendation that commercial developments be located close to the town center "where feasible" was too ambiguous to be enforced against Applicant. Id. at ¶ 23. Accordingly, the Supreme Court's February 1 decision established that Applicant's proposed project only exhibited deficiencies in regard to Act 250 criteria 8 and 9(B).

7. Applicant thereafter filed a motion for re-argument with the Supreme Court; the Court denied its motion by entry order of March 14, 2008.

8. Approximately five and one-half months after this denial, on August 29, 2008, Applicant filed a reconsideration request with the District Commission pursuant to 10 V.S.A. § 6087(c). Section 6087(c) allows an applicant who has been denied an Act 250 permit to seek reconsideration of the permit within six months of the final permit denial—so long as the applicant certifies that it has corrected the deficiencies identified in the prior denial of its original application. 10 V.S.A. § 6087(c).[5]

9. On February 20, 2009, the District Commission determined that the Applicant's revised project design corrected the problems concerning Act 250 criterion 8, but the project continued

---

[3] As a result of this conclusion, the Court did not reach whether the proposed project violated any clear, written community standard. In re Times & Seasons, LLC, 2008 VT 7, ¶ 10.

[4] The Court also agreed with the Environmental Board that Applicant had failed to meet each of the four sub-criteria to criterion 9(B). Id. at ¶ 17–20 (examining 10 V.S.A. § 6086(a)(9)(B)(i)–(iv)).

[5] Interpreting and implementing this provision, the Environmental Board promulgated Rule 31(B), which says in part that "[a]n applicant for a permit which has received a final denial of an Act 250 permit application from a district commission or a court may, within six months of the date of that decision, apply to the district commission for reconsideration pursuant to 10 V.S.A. § 6087(c)." Act 250 Rule 31(B).

to be noncompliant with criterion 9(B). It therefore denied Applicant's application. Applicant timely appealed to this Court on March 11, 2009. As a consequence of prior pretrial motions and amended pleadings, Applicant's Amended Statement of Questions raises the sole issue of whether Applicant's proposal now complies with Act 250 criterion 9(B).

10. The Court has not been provided with Applicant's reconsideration request. Nor has the Court been provided with the affidavit certifying that the deficiencies have been corrected, which is required by 10 V.S.A. § 6087(c). In fact, Applicant makes no claim that it has revised its March 2004 application to bring the project into compliance with criterion 9(B).

11. The record further indicates that Applicant already constructed a building on the project site while the original Act 250 application was pending before the Supreme Court. The roughly 4,800-square-foot building is located in approximately the same footprint as the gift shop and deli proposed in March 2004, and the floor plan is substantially similar. Applicant has represented that this building's sole purpose, for the time being, is to produce maple syrup.[6] We have not been made aware that this building has been actually operated for this purpose.

12. At the request of the parties, the Court visited the property with the parties and conducted a site visit. This site visit helped the Court put into context the facts the parties have represented in support of their respective motions for summary judgment.

**Discussion**

Applicant seeks an Act 250 permit for a deli and gift shop on a 7.3± acre parcel near the Joseph Smith Birthplace Memorial in South Royalton, a project initially proposed in March 2004. It was initially denied a permit by the District Commission in 2004, and was thereafter denied a permit by the Environmental Board in 2005. In March of 2008, the denial of Applicant's application was affirmed by the Vermont Supreme Court for failing to comply with Act 250 criteria 8 and 9(B). Within six months of the Supreme Court's March 14, 2008 entry order, Applicant filed with the District Commission an application for reconsideration pursuant to 10 V.S.A. § 6087(c). Based upon the additional evidence of renewed compliance, the District Commission granted the application with respect to criterion 8, but it denied the application

---

[6] In reliance on Applicant's representation, the District Commission Coordinator issued an Act 250 Jurisdictional Opinion that determined Applicant's construction of the building solely for maple syrup production qualified as farming, which is exempt from Act 250 jurisdiction under 10 V.S.A § 6001(22)(D). Jurisdictional Opinion #3-104 from Julia Schmitz, District 3 Environmental Commission Coordinator, to Josephine Levasseur, Chair of the Royalton Planning Commission, at 2 (June 15, 2006).

4

under criterion 9(B). Applicant has now appealed that decision to this Court. The sole issue on appeal is whether Applicant has corrected the deficiencies that formed the basis for the application denial and satisfied criterion 9(B) as a result. If so, Applicant may be entitled to an Act 250 permit for the March 2004 application involving the gift shop and deli.

Currently pending before the Court are three cross-motions for summary judgment. In its motion, the Planning Commission principally maintains that we should summarily deny Applicant an Act 250 permit because Applicant failed to seek reconsideration within six months of the Environmental Board decision. The Planning Commission contends that since Applicant instead appealed to the Supreme Court, it waived its right to seek reconsideration. The Commission argues that allowing Applicant to seek reconsideration after exhausting its appellate options undermines judicial principles of finality.

The NRB contends in its motion for summary judgment that, even if Applicant's application for reconsideration was timely, Applicant's Act 250 application should be summarily denied because Applicant has not modified its project to correct the deficiencies identified by the Supreme Court. The NRB argues that the Court's prior finding of noncompliance with criterion 9(B) is the law of the case and, absent a demonstration that the conflicts have been addressed, the pending application must be denied as a matter of law.

Applicant has responded in opposition to both motions, in addition to filing its own motion for summary judgment. Applicant argues against the Planning Commission's motion by contending that the six-month window to file for reconsideration began when the Supreme Court's March 14 entry order rendered final the Act 250 permit denial. In opposition to the NRB, Applicant argues that no project modifications are necessary because the statutory definition of "primary agricultural soils" has been amended and, because of that amendment, the soils on Applicant's land are no longer regarded as the type of agricultural soils protected under criterion 9(B).[7] Applicant ultimately contends that the undisputed facts indicate that its Act 250 application is entitled to approval as a matter of law because the proposed project satisfies the

---

[7] Applicant also argues, in the alternative, that even if the soils its development will impact are regarded as "primary agricultural soils," as now defined, it should be allowed to present evidence, including new evidence offered in support of the application it seeks to have reconsidered, that it can satisfy the mitigation and other subsections of criterion 9(B). Because we conclude below that this amended definition does not apply within the context of reconsidering Applicant's original application, we do not address this additional legal argument.

5

current version of 10 V.S.A. § 6086(a)(9)(B).[8] For the reasons detailed below, we decline to adopt Applicant's reasoning and concur with the arguments made on behalf of the NRB in regard to reconsideration requirements.

We begin our analysis by noting (as we must) that summary judgment is only appropriate "when the record clearly shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Madkour v. Zoltak, 2007 VT 14, ¶ 12, 181 Vt. 347 (quoting Bacon v. Lascelles, 165 Vt. 214, 218 (1996)); see also V.R.C.P. 56(c)(3). The Court "place[s] the burden of proof on the moving party, and give[s] the opposing party the benefit of all reasonable doubts and inferences." Chapman v. Sparta, 167 Vt. 157, 159 (1997). However, when presented with cross-motions for summary judgment, we must consider each motion independently, affording all reasonable doubts and inferences to the party opposing the particular motion under consideration. DeBartolo v. Underwriters at Lloyd's of London, 2007 VT 31, ¶ 8, 181 Vt. 609 (mem.) (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)). We apply these standards to the pending cross-motions, beginning with the Planning Commission's argument that Applicant's reconsideration request was untimely.

Act 250 permit applicants have long taken advantage of the opportunity to seek reconsideration pursuant to 10 V.S.A. § 6087(c). See, e.g., Re: Sherman Hollow, Inc., No. 4C0422-5R-1-EB, Findings of Fact, Conclusions of Law, and Order (Revised) (Vt. Envtl. Bd. June 19, 1992), aff'd, 160 Vt. 627 (1993) (mem.). Most often, however, applicants have applied for reconsideration after being denied an Act 250 permit by the applicable district commission or the Environmental Board. See, e.g., Re: Gary Savoie d/b/a WLPL, No. 2W0911-EB (Reconsideration), Findings of Fact, Conclusions of Law, and Order (Vt. Envtl. Bd. Aug. 27, 1997). In fact, the Court has not been made aware of any prior instance in which an applicant applied for reconsideration following a denial by the Vermont Supreme Court. This case presents such a situation.

Instead of seeking reconsideration within six months of the District Commission or Environmental Board denials in 2004 and 2005, Applicant chose to appeal to the Supreme Court. Only after the Supreme Court issued a final entry order on March 14, 2008, thereby bringing

---

[8] Criterion 9(B) applies only if primary agricultural soils exist on the project site. If primary agricultural soils are present, criterion 9(B) requires an applicant to demonstrate either that the proposed project will not reduce the agricultural potential of such soils, or that the proposed project will comply with sub-criteria (i)-(iv). 10 V.S.A. § 6086(a)(9)(B).

finality to the denial of Applicant's Act 250 application, did Applicant seek reconsideration pursuant to 10 V.S.A. § 6087(c). As a result, Applicant's reconsideration request was filed four years after the District Commission and Environmental Board denials, but only five and one-half months after the Supreme Court's final determination.

The Planning Commission argues in its motion for summary judgment that Applicant cannot seek reconsideration after appealing an Act 250 permit denial to the Supreme Court. It maintains that § 6087(c) only allows reconsideration within six months of a denial by the Environmental Board (or presumably this Court, now that it has been assigned jurisdiction over Act 250 appeals), and that Applicant waived its right to seek reconsideration by appealing to the Supreme Court. According to the Planning Commission, allowing Applicant to request reconsideration and offer new evidence in support of reconsideration, after exhausting its appellate options, undermines the principles of finality and judicial economy.

While we share the Planning Commission's concerns for efficiency and finality, we disagree with the conclusion that reconsideration offends these principles. As is discussed below, the reconsideration process authorized by § 6087(c) respects finality by limiting the issues that can be raised; an applicant cannot challenge final determinations previously made in the original permit denial. In addition, allowing an applicant to seek reconsideration upon its original application following an appeal to the Supreme Court, based upon new evidence that it has cured the found deficiencies, adds legitimacy to the process and does not involve the unnecessary expenditure of judicial resources. For the following reasons, we conclude that Applicant did not waive its right to file a reconsideration request by first exhausting its appellate rights.

Applications for reconsideration filed pursuant to 10 V.S.A. § 6087(c) provide an Act 250 applicant with a unique opportunity. Under this provision, "[a] person may, within six months [of a permit denial], apply for reconsideration of his permit" if he certifies that he has corrected the problems that formed the basis for the denial. 10 V.S.A. § 6087(c). This "give[s] an applicant whose application has been denied an opportunity to revise its proposal to correct the deficiencies identified in the denial without having to file a new application." Re: Berlin Associates, No. 5W0584-14-EB, Mem. of Decision, at 5 (Vt. Envtl. Bd. Jan. 10, 1992). As a result, she need not pay a new application fee, and all the affirmative findings made in the original decision are entitled to a rebuttable presumption of validity. Id. at 5–6.

7

In order to enjoy the benefits of seeking reconsideration, however, an applicant is limited to correcting the deficiencies that provided the basis for the original permit denial. "[R]equiring that deficiencies be corrected serves the important policy of preserving the integrity of [the] Act 250 decision-making [process] by preventing relitigation of issues addressed in the original decision." Sherman Hollow, Inc., No. 4C0422-5R-1-EB, at 19. In effect, this precondition ensures that a reconsideration request sufficiently addresses the deficiencies already ruled upon, rather than requiring the applicant to submit a new application; in return for a limited proceeding, based only upon the original application's shortcomings, an applicant can avoid the expense and review of filing a new application, which would be subject to review under possibly revised criteria. See Re: The Van Sicklen Ltd. P'ship, No. 4C1013R-EB, Mem. of Decision, at 11–15 (June 8, 2001) (discussing collateral estoppel in the context of reconsideration).

In light of the narrow purpose of 10 V.S.A. § 6087(c), the sole issue presented in a request for reconsideration is whether an applicant has corrected the deficiencies identified in the original permit application. See, e.g., Gary Savoie, No. 2W0911-EB, at 6. It is not a vehicle to relitigate issues that were already decided. Instead, it involves "accepting the denial and finding a way to meet its terms." Re: Taft Corners Assocs. Inc., No. 4C0696-11-EB (Remand), Mem. of Decision, at 9 (Vt. Envtl. Bd. May 5, 1995). In this sense, reconsideration does not disturb the decision announced in the permit denial, and a final denial by the Supreme Court remains a final judgment.

Furthermore, allowing an applicant to appeal the denial to the Supreme Court before it seeks reconsideration under § 6087(c) adds legitimacy and certainty to the process. By appealing an Act 250 permit denial to the Supreme Court, an applicant can be certain that the deficiencies identified by the lower tribunal are legitimate grounds for a permit denial. It allows our state's highest authority to confirm the specific deficiencies that must be corrected on reconsideration. The converse scenario facilitates an unjust result; foreclosing reconsideration under § 6087(c) after an appeal to the Supreme Court might compel an applicant to accept deficiencies named by a lower tribunal with which it disagrees—deficiencies that may not be supported by the law or facts. The facts of this case nicely illustrate why it is preferable to allow appeal to the Supreme Court.

In this instance, the Environmental Board identified three deficiencies with Applicant's March 2004 application: failures to comply with criteria 8, 9(B), and 10. However, the Supreme

8

Court on appeal only upheld two of the deficiencies found by the Board (criteria 8 and 9(B)), concluding that ambiguous language in the Town Plan rendered the project compliant with criterion 10. Had Applicant accepted the Environmental Board's denial and corrected all three deficiencies, Applicant would have been compelled to meet a standard the Supreme Court deemed unenforceable. The Supreme Court's decision therefore made a final determination as to which deficiencies must be corrected in a reconsideration of the original application, providing legitimacy to the process.

Finally, we find support in Environmental Board precedent for allowing Applicant to seek reconsideration pursuant to § 6087(c), even after appealing to the Supreme Court.[9] The Environmental Board has declared that "the running of the time in which to file for reconsideration is stayed by the filing of an appeal." J. Philip Gerbode and Highland Development Corp., No. 6F0396-EB, Prehearing Conference Report and Order, at 1 n.1 (Vt. Envtl. Bd. Oct. 17, 1989) (calculating the six-month deadline from the date of the last Environmental Board decision). Therefore, the six-month window for reconsideration, under section 6087(c), commences when a final decision is issued, whether it is from the Environmental Board, this Court, or the Supreme Court on appeal.

The record currently before the Court indicates that Applicant sought reconsideration approximately five and one-half months after its Act 250 permit denial became final. We therefore conclude that Applicant timely filed its reconsideration request, and **DENY** the Planning Commission summary judgment on this issue.

In light of this conclusion, we must now determine whether Applicant has met the standards for reconsideration and whether Applicant deserves an Act 250 permit for its proposed deli and gift shop as a matter of law, thereby addressing the legal issues presented in the remaining summary judgment motions.

On this issue, the NRB contends that summary judgment is warranted on its behalf because Applicant has not modified its March 2004 application to correct the deficiencies regarding criterion 9(B). It argues that the Supreme Court concluded that Applicant's March 2004 application failed to conform to criterion 9(B) when it upheld the finding that Applicant's proposal would disturb 1.9± of 2.8± acres of primary agricultural soil on the project site. See In

---

[9] This Court is directed to give the decisions of the Environmental Board "the same weight and consideration as prior decisions" of this Court. 10 V.S.A. § 8504(m).

re Times & Seasons, LLC, 2008 VT 7, ¶ 16, 183 Vt. 336.  Accordingly, this is the law of the case, which should control the outcome of Applicant's reconsideration request absent a demonstration that the March 2004 application has been sufficiently modified.  See Coty v. Ramsey Assocs., Inc., 154 Vt. 168, 171 (1990) (explaining that a decision by the Supreme Court is the law of the case "on the points presented throughout all the subsequent proceedings therein, and no question then necessarily involved and decided will be reconsidered by the Court in the same case on a state of facts not different in legal effect" (quoting Perkins v. Vermont Hydro-Electric Corp., 106 Vt. 367, 415–16 (1934))).

In response, Applicant concedes that it has not revised its March 2004 application to bring the project into compliance with criterion 9(B).  Instead, Applicant asserts that a change in law since its original application renders modification unnecessary to meet criterion 9(B).  On July 1, 2006, while Applicant's Act 250 permit application was on appeal to the Supreme Court, the Legislature amended the definition of "primary agricultural soils."  See 10 V.S.A. § 6001(15) (2006).  According to Applicant, the soils on the project site do not fit the amended definition of "primary agricultural soils."  As a result, Applicant argues that the project proposed in March 2004 will not impact any protected soils; an Act 250 permit should issue because the original project now meets the current requirements of criterion 9(B).  For reasons more fully discussed below, we conclude that Applicant cannot take advantage of the amended definition of primary agricultural soils in a proceeding to reconsider its original application.  Therefore, we conclude that Applicant's revised Act 250 application fails to conform to the applicable version of criterion 9(B) as a matter of law.

As a starting point, it is well settled in Vermont that an Act 250 permit application is governed by the law in effect at the time a completed permit application is filed.  In re Jolley Assocs., 2006 VT 132, ¶ 11, 181 Vt. 190 (citing Smith v. Winhall Planning Comm'n, 140 Vt. 178, 181–82 (1981)).  It is also established that seeking reconsideration "does not constitute the submission of a new application;" it instead "constitute[s] the review of the original, albeit modified, application."  Re: Barre City Sch. Dist., No. 5W1160-Reconsideration-EB, Findings of Fact, Conclusions of Law, and Order, at 14 (Vt. Envtl. Bd. Jan. 30, 1995) (citing Sherman Hollow, Inc., No. 4CO422-SR-l-EB, at 17–19).  Based upon this precedent, we conclude that the controlling law in this case is the definition of primary agricultural soils that was in effect when Applicant filed its original Act 250 permit application in March 2004.

Applicant responds by arguing that it can take advantage of beneficial changes in law that occur while an Act 250 permit application is pending. In support, Applicant points to a line of decisions from the Environmental Board that applied changes in law to pending applications when the change "benefit[ed] the applicant or [had] the effect of making [Act 250 requirements] less onerous or restrictive." See, e.g., Re: Okemo Ltd. Liability Co., No. 2S0351-24B-EB, Mem. of Decision, at 5 (Vt. Envtl. Bd. May 10, 2004); Re: Dr. Anthony Lapinsky and Dr. Colleen Smith, Nos. 5L1018-4 & 5L0426-9-EB, Findings of Fact, Conclusions of Law, and Order, at 24 (Vt. Envtl. Bd. Oct. 3, 2003); Re: Swedish Ski Club of Vermont Land Trust, Declaratory Ruling #411, Findings of Fact, Conclusions of Law, and Order, at 7 (Vt. Envtl. Bd. Jan. 16, 2003); Re: Juster Development Co., No. 1R0048-8-EB, Findings of Fact, Conclusions of Law and Order, at 33 (Vt. Envtl. Bd. Dec. 19, 1988). Applicant contends that the amended definition of primary agricultural soils creates less onerous requirements for an applicant under criterion 9(B) and therefore should be applied to its pending application.

Although the cases cited by Applicant appear to support the position that an applicant can take advantage of certain changes in the governing laws, none of Applicant's proffered authorities involve the retroactive application of a statutory amendment. Instead, these cases involved amendments to Act 250 Rules, zoning regulations, or town plans. See, e.g., Okemo. LLC, No. 2S0351-24B-EB, at 5 (applying amended Act 250 Rule 14); Dr. Anthony Lapinsky, Nos. 5L1018-4 & 5L0426-9-EB, at 24 (applying amended Act 250 Rule 34); Swedish Ski Club, Declaratory Ruling #411, at 7 (applying the amended Act 250 Rule 2); Juster Development, No. 1R0048-8-EB (addressing amendments to the town plan); see also Re: Fred and Laura Viens, No. 5W1410-EB, Mem. of Decision, at 4 (Vt. Envtl. Bd. Sep. 3, 2003) (applying an amended town plan).

As the Supreme Court recently explained, the effect of a statutory amendment on pending litigation is governed by 1 V.S.A. § 214. In re Eustance Jurisdictional Opinion, 2009 VT 16, ¶ 26. Section 214 states that a statutory amendment shall not:

> Affect any suit, remedy or proceeding to enforce or give effect to any right, privilege, obligation or liability acquired, incurred or accrued under the amended or repealed provision prior to the effective date of the amendment or repeal; and the suit, remedy or proceeding may be instituted, prosecuted or continued as if the act or provision had not been repealed or amended.

1 V.S.A. § 214(b)(4).  Interpreting this language, the Supreme Court concluded that a statutory amendment can "only" be applied to pending litigation if it "will not affect any right, privilege, obligation, or liability acquired prior to the statute's effective date."  Eustance, 2009 VT 16, ¶ 27 (quoting Sanz v. Douglas Collins Construction, 2006 VT 102, ¶ 7, 180 Vt. 619 (mem.)).  In fact, in one case where a statute was amended while an Act 250 application was pending, our Supreme Court noted that the "correct version of Criterion 9(B), for purposes of evaluating [a pending application], was that in effect in 2005" when the application was first submitted, and not the version amended in 2007.  In re Eastview at Middlebury, Inc., 2009 VT 98, ¶ 8.  Thus, the definition of primary agricultural soils in effect in March 2004 controls Applicant's pending application unless the amended definition does not affect Applicant's rights or obligations.

Applicant contends that the definitional change does not affect any of its prior legal obligations: it must still secure an Act 250 permit, and it must continue to comply with criterion 9(B).  This argument lacks credibility.  Under the former definition of primary agricultural soils, Applicant was foreclosed from proceeding with the proposed project because it would significantly reduce the agricultural potential of the primary agricultural soils on the project site.  See In re Times & Seasons, LLC, 2008 VT 7, ¶ 16.  The Supreme Court ruling made a final determination of how the applicable provision of criterion 9(B) should be interpreted when applied to the pending application; it became the law of this application.  Applicant thus had an obligation not to disturb the site's primary agricultural soils.

Applicant now seeks to avoid that obligation, arguing that the amended statute removes the subject soils from the definition of primary agricultural soils and regulation under Act 250 criterion 9(B).  If we were to accept Applicant's argument, the definitional change would void the Supreme Court's ruling upon Applicant's pending application.

Since a statutory amendment will only be applied to pending litigation if it will not affect any obligations previously acquired, Applicant cannot rely on the amended definition of primary agricultural soils when asking for its prior application to be reconsidered.  The version in effect in 2004 is the version applicable to the pending application, and the law of the case is that Applicant's application fails to comply with that version of criterion 9(B) because it will adversely impact 1.9± of 2.8± acres of primary agricultural soil on the project site.  Id.

Based on the foregoing, and because Applicant has not offered any remedies to the deficiencies in its original application, we conclude that Applicant has not satisfied the

requirements necessary to obtain approval of its pending Act 250 application through reconsideration pursuant to 10 V.S.A. § 6087(c). Applicant cannot rely on a statutory amendment in seeking reconsideration, and Applicant has presented no evidence that it corrected the deficiencies in the original Act 250 permit application concerning criterion 9(B). There is no dispute that Applicant has not proposed any modifications that would bring the proposed project into compliance with the applicable version of criterion 9(B). As a result, the Supreme Court's previous determination on this issue is the law of the case. We therefore **DENY** Applicant's Act 250 permit application and **GRANT** the NRB summary judgment, concluding that Applicant's original application, even as revised, cannot as a matter of law satisfy the applicable version of Act 250 criterion 9(B).[10]

We note in closing that Applicant is not foreclosed from arguing that the 2.8± acres of subject soils on the project site no longer constitute primary agricultural soils under the amended definition. To do so, Applicant need only submit a new Act 250 application while the amended definition is in effect. This of course "requires the payment of a new fee . . . [and] . . . that the new application be substantially different from prior applications." Re: Berlin Assocs., No. 5W0584-14-EB, Mem. of Decision, at 6 (Vt. Envtl. Bd. Jan. 10, 1992). This necessarily preserves the finality of the Supreme Court determination on Applicant's original application that is fundamental to our judicial system, and it allows Applicant to pursue permit approval under the applicable laws now in effect.

## Conclusion

For all the reasons more fully discussed above, we **DENY** the Planning Commission's motion for summary judgment, concluding that Applicant timely filed its request for reconsideration pursuant to 10 V.S.A. § 6087(c). We also conclude that Applicant has failed to correct the deficiencies in its original Act 250 permit application concerning criterion 9(B) and that, in seeking reconsideration of that application, Applicant cannot avail itself of the definition of primary agricultural soils, amended during the course of its litigation, to secure compliance with criterion 9(B). As a result, we **GRANT** the NRB summary judgment on those issues. Applicant's pending Act 250 permit application to construct a deli and a gift shop, with related

---

[10] In light of this conclusion, we need not address the remaining arguments raised in the pending motions for summary judgment, including Applicant's argument that the undisputed facts indicate that the soils on the property do not constitute primary agricultural soils under the amended definition. We similarly decline to address the NRB's pending motions to strike portions of Appellant's pleadings.

improvements, is therefore **DENIED**. In light of our determinations here, we do not address the remaining arguments presented by Applicant. We also conclude that the NRB's pending motions to strike must be **DENIED** as moot.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court. As a consequence, the pretrial conference currently rescheduled for this appeal on Thursday, April 1, 2010, as well as the merits hearing scheduled for April 13–14, 2010, are hereby **CANCELLED**.

Done at Berlin, Vermont, this 29th day of March 2010.


_____
Thomas S. Durkin, Environmental Judge